DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Co Le'Mon, LLC ("CLM") has appealed from the decision of the Lorain County Court of Common Pleas which granted Defendant-Appellee Host Marriott Corporation ("Marriott") summary judgment. This Court affirms.
 {¶ 2} On December 6, 2002, CLM filed a complaint in the Lorain County Court of Common Pleas which sought to recover unpaid rent and other charges allegedly owed pursuant to a long term commercial lease. Marriott failed to answer and as a result, on March 3, 2003, default judgment was awarded to CLM against Marriott in the sum of $214,178.53 plus interest. On April 28, 2004, Marriott filed a motion to vacate the judgment. On June 16, 2004, the trial court vacated the default judgment.
 {¶ 3} On August 6, 2004, Marriott filed a motion to dismiss for failure to state a claim on which relief could be granted. On September 21, 2004, the trial court granted Marriott's motion and dismissed CLM's complaint. CLM appealed to this Court on October 15, 2004 and on June 13, 2005, this Court reversed the trial court's order dismissing the complaint and remanded the case to the trial court.
 {¶ 4} On remand, Marriott filed a motion for summary judgment on July 7, 2005. On August 22, 2005, the trial court granted Marriott's motion for summary judgment.
 {¶ 5} CLM has timely appealed, asserting one assignment of error.
 ASSIGNMENT OF ERROR NUMBER I
"The trial court erred as a matter of law and to the prejudice of the appellant by determining that there were no genuine issues as to any material fact regarding whether or not there was a merger of interest in a lease between appellant and its tenant."
 {¶ 6} In its first assignment of error, CLM has argued that the trial court erred in granting summary judgment to Marriott as there remained genuine issues of material fact to be determined at trial. Specifically, CLM has argued that there was a genuine issue of material fact as to whether or not a merger of interests extinguished CLM's claims. We disagree.
 {¶ 7} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. This Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948,107 S.Ct. 433, 93 L.Ed.2d 383. Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 8} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id.
 {¶ 9} Once the moving party's burden has been satisfied, the non-moving party must meet its burden as set forth in Civ.R. 56(E). Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. Id. See, also, Henklev. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 10} Pursuant to Civ.R. 56(C):
"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 11} Before we address the merits of the instant matter, it is necessary to provide a factual framework of the case. In 1977, James and Mary Abraham, predecessors in interest to CLM, entered into a 25 year commercial lease agreement with Marriott. In 1985, Marriott, under the authority of the lease and with the permission of CLM, assigned all of its interest in the lease to Elias Brothers Restaurants, Inc. ("Elias"). The assignment agreement provided that Elias would indemnify Marriott for any breach or failure to make payments under the lease. In or around 1999, Elias stopped paying rent.
 {¶ 12} On October 20, 2000, Elias filed for Chapter 11 bankruptcy in the Eastern District of Michigan Bankruptcy Court. As part of the bankruptcy proceedings, Elias rejected the lease pursuant to 11 U.S.C. 365. CLM and Elias entered into a court approved settlement agreement. On May 10, 2001, the Bankruptcy Court entered an order (the "Stipulated Order") which vacated Elias' rejection of the lease, authorized Elias' assumption of the lease, and ordered Elias to assign the lease to CLM. By the terms of the stipulated order, CLM agreed to waive any and all claims against Elias.
 {¶ 13} In the instant matter, Appellant has contended that pursuant to the Stipulated Order, paragraph 3, the parties (CLM and Elias) intended that Elias assign the lease to CLM, Ltd., a sister corporation. However, later in the same document, the Bankruptcy Court ordered Elias to assign the lease to "CoLeMon" which had previously been defined by the court as CLM, not CLM, Ltd. CLM has argued that the Stipulated Order was ambiguous and therefore there was a genuine issue of material fact whether the lease was assigned to CLM Ltd. or CLM, LLC.
 {¶ 14} Marriott has argued that regardless of any ambiguity, the Bankruptcy Court ordered that the lease be assigned to CLM and consequently, CLM became both landlord and tenant. Marriott has argued that such a duality caused the lessor and lessee interests to merge and extinguished the lease. Further, Marriott has argued that "because no obligation survived the merger of the leasehold and the fee simple estate, there can be no outstanding debt to recover."
 {¶ 15} While Marriott's recitation of the merger doctrine is correct in this case, its assessment of the ramifications of such a merger is not. It is true that a merger of a leasehold and fee interest eliminates the tenancy. State ex rel. Vanmeter v.Lawrence County (July 8, 1994), 4th Dist. No. 93CA27, 1994 WL 323703, at FN 4, citing Comstock v. Smith (Ohio App. 1943), 57 N.E.2d 234, 235. "Where a leasehold estate for years merges in a greater estate * * * the relationship of landlord and tenant which had been created by the estate is extinguished." Annotation (1943), 143 A.L.R. 93, 124. Therefore, a merger of interests in a case such as this will "eliminate the tenancy and * * * the duty to make rent payments under the lease." Lapp v. Carte (June 17, 1992), 4th Dist. No. 470, 1992 WL 154155, at *3 (Stephenson, P.J. concurring). See also Annotation (1943), 143 A.L.R. 93, 124 (stating "[w]here a leasehold estate for years is absorbed by the operation of the doctrine of merger, the lessee's obligation to pay rent is terminated").
 {¶ 16} It is apparent to this Court that the law cited by Marriott stands for the proposition that merger only terminates the obligation to pay those rents accruing after the merger. However, Marriott's proposition that because the lease was terminated there can be no outstanding debt to recover is not supported by any of the case law before this Court. In fact, we find such a result would be inequitable to the landlord. Accordingly, we hold that a tenant's obligation to pay unpaid past due rent is not extinguished when the lease is terminated due to a merger, however, the obligation to pay further rent is.
 {¶ 17} This Court's analysis does not end with our determination concerning the consequences of the merger. We have held that "an appellate court shall affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the wrong reason, because such an error is not prejudicial." (Citation omitted). Cook FamilyInvests. v. Billings, 9th Dist. Nos. 05CA008689 05CA008691,2006-Ohio-764, at ¶ 19. It is well established in Ohio that "a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." State ex rel. Carter v. Schotten (1994),70 Ohio St.3d 89, 92. See also Agricultural Ins. Co. v. Constantine
(1944), 144 Ohio St. 275, 284; Billings at ¶ 19.
 {¶ 18} It is clear from the record that on April 19, 1985, Marriott assigned its lease to Elias, pursuant to paragraph 2.7 of the lease. This Court has held that "[g]enerally, an assignment divests the original lessee of his interest in the property, but not of his responsibilities under express covenants provided in the lease." Manlaw Investment Co. v. Host MarriottCorp., 9th Dist. No. 02CA0100-M, 2003-Ohio-2347, at ¶ 7. These express covenants include the covenant to pay rent throughout the full term of the lease. Id. Further, "[m]ere consent by the lessor to the assignment * * * and receipt of rent from the assignee, without more, will not discharge the original lessee for liability." Id.
 {¶ 19} Marriott has argued in its brief that by virtue of its assignment of the lease to Elias and the resulting guarantor/surety relationship, that CLM's release of Elias pursuant to the Stipulated Order operated to release Marriott as well. CLM has argued that under the terms of the lease, while Marriott maintained the right to assign the lease, Marriott remained liable for the rent as the primary obligor. Further CLM has argued that Marriott was neither a guarantor nor a surety of Elias and furthermore, that its waiver of all claims against Elias only pertained to further claims against the bankruptcy estate and did not release Elias from liability. This Court finds Marriott's argument to be persuasive.
 {¶ 20} The Ohio Supreme Court has held that:
"In Ohio, as elsewhere, the rule prevails that when a lease is assigned by the lessee, the assignee becomes the principal obligor for the payment of the rent thereafter accruing and the future performance of the covenants, and the lessee assumes the position of surety toward the lessor." Gholson v. Savin (1941),137 Ohio St. 551, 557. See also Fleming v. Rusch Properties
(Mar. 1, 2001), 10th Dist. No. 00AP-595, 2001 WL 208520, at 3 (citing Gholson supra).
 {¶ 21} In the instant matter, it is clear that Marriott assigned its lease to Elias and thereby Elias became the principal obligor and Marriott became the guarantor or surety for Elias. This is congruent with paragraph 2.7 of the lease which expressly allowed Marriott to assign the lease provided Marriott's continued liability. Under the assignment, Marriott did continue to be liable for the rent payments, only in the position of guarantor — not as the primary obligor.
 {¶ 22} Had CLM desired to hold Marriott liable as the primary obligor, it could have expressly stated so in the lease. For example, in Manlaw,[1] supra, the landlord provided for exactly such a scenario and included a provision in its consent agreement whereby the tenant:
"`[M]ay at any time assign this Lease * * * but no assignment or sublease shall reduce or affect in any way any of the obligations of [tenant] hereunder, and all such obligationsshall continue in full effect as obligations of the principaland not as obligations of a guarantor or surety, to the same extent as though no assignment or subletting had been made.'" (Emphasis added). Manlaw at ¶ 8.
 {¶ 23} By comparison, CLM's lease contained no such language:
"Tenant shall have the right to assign this Lease * * * provided Tenant continues to be liable for the prompt and full payments of the rentals and other payments required hereunder."
 {¶ 24} A lease is a contract between the landlord and tenant.Christe v. GMS Mgt. Co. (1997), 124 Ohio App.3d 84, 88. That being the case, this Court interprets the language of a contract "in accordance with its plain and ordinary meaning." ValleyForge Ins. Co. v. Premier Recyclers Plastics, Inc., 9th Dist. No. 22633, 2005-Ohio-6317, at ¶ 12, citing Karabin v. StateAuto. Mut. Ins. Co. (1984), 10 Ohio St.3d 163, 166-67. Further, it is "well established that where there is doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it." (Citation omitted). McKay MachineCo. v. Rodman (1967), 11 Ohio St.2d 77, 80. Therefore, our conclusion that under the assignment, Marriott continued to be liable for the rent payments, only in the position of guarantor — not as the primary obligor, is supported by Ohio case law and this Court's precedents.
 {¶ 25} It is settled law in Ohio that "if a creditor executes a written release of the debt to the debtor, one who guarantees the payment of the debt is also released from his obligation as guarantor of the debt." Bank One, Akron, N.A. v. Smart-TomlinsonCorp. (Dec. 28, 1988), 9th Dist. No. 13697, at 4, citing BananaSales Corp. v. Chuchanis (1928), 119 Ohio St. 75, paragraph one of the syllabus. In the present matter, CLM entered into the Stipulated Order with the debtor, Elias, wherein CLM "waive[d] any and all claims against the Debtor, including claims for administrative expense and amounts required to `cure' pursuant to Section 365[.]" Therefore, if the Stipulated Order constituted a release of Elias' debt, then it operated to release Marriott's obligation as well.
 {¶ 26} CLM has argued that its waiver did not release Elias from liability, but only waived its right to file a proof of claim against Elias in the bankruptcy proceedings. This argument fails for two reasons. First, given a plain reading of the Stipulated Order, CLM waived "any and all claims against" Elias, "including amounts required to `cure'" — in other words, the full amount of the arrearage. Further, CLM has provided no evidence other than its statement in its brief that CLM merely waived its right to pursue Elias in the bankruptcy proceedings. Second, because Elias had already cured its arrearage by assigning the lease to CLM, CLM did not have a claim against the bankruptcy estate to waive. Therefore, logic dictates that CLM's waiver of "any and all" claims is not confined solely to bankruptcy claims, but to all actionable claims.
 {¶ 27} Also, CLM has argued that it never released Elias from liability because essentially a "waiver" is not a "release." This argument is unpersuasive as well. As stated above, this Court interprets the language of a contract "in accordance with its plain and ordinary meaning." Valley Forge at ¶ 12. This Court has consistently resorted to the use of dictionaries to establish the plain and ordinary meaning. See, e.g., Podnar v. NortheastAdjusting Services, Inc. (2000), 137 Ohio App.3d 712, 716. A waiver is the "voluntary relinquishment * * * of a legal right or advantage." Black's Law Dictionary (1999), 1574. A release is "[t]he relinquishment or concession of a right, title, or claim." Id. at 1292. It is apparent to this Court, that within this contractual context, a "waiver" and a "release" are interchangeable terms and operate in the same fashion.
 {¶ 28} Accordingly, because Marriott was the guarantor or surety of Elias, and because CLM waived "any and all claims" against Elias, this Court finds that said waiver operated to discharge Marriott's obligation on the debt as guarantor and summary judgment was proper.
 {¶ 29} CLM's first assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, J., Concurs.
 Moore, J., Concurs in Judgment Only.
[1] Coincidentally, in Manlaw, Marriott was the lessee and Elias was the assignee.