DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Leo Hardison, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On August 5, 2005, the Akron Police Department ("APD") searched a home at 881 Peckham Street, in Akron, Ohio. The home had been under investigation by the Street Narcotic Uniform Detail ("SNUD") unit of the APD as a known drug location. During the search, police recovered approximately 20 grams of crack cocaine from a drawer in Appellant's 12 year-old brother's room.[1] Immediately following this search, the police arrested Appellant's brothers, Darnell Hardison, Jr. ("Hardison") and W.H. Upon arrest, W.H. informed police that the drugs were Appellant's. Police obtained a warrant for Appellant's arrest and shortly after the incident, Appellant turned himself in to authorities. W.H. was taken to Juvenile Court where police found cocaine in his shoe. He pled guilty to possession of this cocaine as well as to the 20 grams of cocaine found in his drawer.
 {¶ 3} Appellant was indicted for one count of possession of cocaine, in violation of R.C. 2925.11 and one count of corrupting another with drugs, in violation of R.C. 2925.02(A)(4)(a). On December 12, 2005, a jury trial commenced. Appellant was tried with his brother, Hardison. At trial, the State presented a taped telephone conversation that Hardison made to Appellant from jail. Appellant objected to the presentation of this tape and to its introduction into evidence. The trial court overruled Appellant's objections and allowed the tape, in full, to be played for the jury. After the State rested its case, and at the close of all evidence, Appellant unsuccessfully moved for a Crim.R. 29 motion for acquittal. Appellant was convicted on both counts and sentenced to two years in prison on each count, to run concurrently. Appellant filed a timely notice of appeal, raising three assignments of error for our review.
 II. ASSIGNMENT OF ERROR I
 "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED HEARSAY STATEMENTS THAT DARNELL HARDISON MADE DURING A TAPED TELEPHONE CONVERSATION BECAUSE THESE STATEMENTS ARE NOT ADMISSIONS OF A PARTY-OPPONENT, CONSTITUTE INADMISSIBLE `HEARSAY WITHIN HEARSAY,' AND DO NOT FALL UNDER ANY HEARSAY EXCEPTION SO AS TO BE ADMISSIBLE AGAINST [APPELLANT]."
 {¶ 4} In Appellant's first assignment of error, he argues that the trial court abused its discretion when it admitted hearsay statements that Darnell Hardison made during a taped telephone conversation because the statements were not admissions of a party-opponent, constituted inadmissible `hearsay within hearsay,' and did not fall under any hearsay exception so as to be admissible against Appellant. We disagree.
 {¶ 5} A trial court possesses broad discretion with respect to the admission of evidence. State v. Maurer (1984), 15 Ohio St.3d 239, 265. An appellate court will not disturb evidentiary rulings absent an abuse of discretion. State v. Roberts, 156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. It appears that the trial court admitted the statements based on the theory that they were "interlocking confessions." While we do not agree with this reasoning, we find, for the reasons set forth below, that the trial court reached the correct result. "It is well established in Ohio that `a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof.'" Co Le'Mon, L.L.C. v. HostMarriott Corp., 9th Dist. No. 05CA008797, 2006-Ohio-2685, at ¶ 17
quoting State ex rel. Carter v. Schotten (1994), 70 Ohio St.3d 89, 92. Further, "[t]he trial court's ultimate judgment in this case was correct, and it is the court's ultimate judgment we are affirming in this Opinion." Abdalla's Tavern v. Department Of Commerce, Div. Of StateFire Marshal, 7th Dist. No. 02 JE 34, 2003-Ohio-3295, at ¶ 83.
 {¶ 6} Appellant contends that Hardison's taped jailhouse telephone conversation with him was inadmissible hearsay; i.e., statements made by someone other than the declarant at trial that are offered into evidence to prove the truth of the matter asserted. See Evid.R. 801; Evid.R. 802. However, an admission by a party opponent is not hearsay. Evid.R. 801(D)(2). Thus, a statement is admissible if: "[t]he statement is offered against a party and is * * * (b) a statement of which he has manifested his adoption or belief in its truth[.]" Id.
 {¶ 7} In the instant case, Appellant does not argue that his own statements were inadmissible. Rather, he concedes that his statements on the tape recording are admissible as admissions by a party opponent. "However, [Appellant] fails to recognize that admissions by a party opponent include the statements or questions to which [he] responds; otherwise, the statements would mean nothing in many contexts."State v. Spires, 7th Dist. No. 04 NO 317, 2005-Ohio-4471, at ¶ 38. Under Rule 801(D)(2)(b), it is not only the party opponent's statements that are admissible, but also those statements that he manifests as his own. During the conversation, Hardison asked Appellant where he was when the police found the drugs at the Peckham Street residence:
 "Hardison: Where was you at?
 "Appellant: I was on my way back there to get that shit.
 "Hardison: They found it in that drawer didn't they?
 "Appellant: Yeah."
 {¶ 8} In this instance, not only is Appellant's admission that he was on his way back to the house to get the drug admissible, but so is Hardison's question implying that Appellant was referring to the drugs that the police found in the drawer. Hardison's questions are admissible to give context to the statements. Similarly, Appellant apologized to Hardison for the fact that Hardison was in jail due to the drugs found at the Peckham Street residence.
 "Hardison: I know you ain't sorry about them gettin' me.
 "Appellant: No, dog, I'm sorry that you in there for me though, dog. I don't feel good about that, man."
Again, both Appellant's statement that he was sorry Hardison was in jail for him and Hardison's statement prompting the apology are admissible.
 {¶ 9} Further, a statement can be adopted by silence. "To show that the nondeclarant silently adopted an out-of-court statement, the context of the utterance must indicate that the nonspeaking party understood the statement, was free to disavow it, and did not deny its truth, even though a reasonable person would have done so." State v. Clark (Sept. 8, 1993), 1st Dist. No. C-920603, at *1, citing Evid. R. 801(D)(2)(b).
 {¶ 10} While Appellant objects to the entirety of the taped telephone conversation, in his brief he specifically points to several statements as inadmissible hearsay. In several instances, Hardison asserted that the drugs found in the Peckham Street residence were Appellant's.
 "Hardison: You shouldn't have hidden it upstairs. That's why I never hide my junk in the house[.]
 "* * *
 "Hardison: You shouldn't have hid that upstairs. I knew that was comin' like that[.]
 "* * *
 "Hardison: You shoulda been listenin' for real. You got me jammed up now with your stuff, dog. Probably gonna do a year or two for that. Man, I ain't gonna do that, dog.
 "* * *
 "Hardison: I'm not goin' down for nobody else's stuff, dog. You shoulda just listened to him, dog[.]
 "* * *
 "Hardison: I'm pissed off at you for puttin' it up there, though. For real. That was dumb, man. I'm cased up. Gotta go down for somebody else's stuff, man.
 "* * *
 "Hardison: I'm in here cuzza you. They get your shit[.]"
 {¶ 11} Appellant did not reply to any of these statements. There is no evidence that Appellant did not understand the nature of the conversation or Hardison's specific statements implicating him as the owner of the drugs. Further, Appellant was free to deny these charges and it would have been reasonable for him to have done so. Therefore, Appellant's silence in response to these statements amounts to an adoption of the truth of these statements, and thus the statements are admissible as admissions of a party opponent. Clark, supra, at *1.
 {¶ 12} Regarding the other statements on the tape that Appellant specifically cited in his brief, we find harmless error. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."
 {¶ 13} These statements include; where the drugs were found, whether the police had a warrant out for Appellant's arrest, what both Hardison and W.H. said when the police found the drugs, and statements that Appellant's father allegedly made. However, most of these statements were testified to during trial by other witnesses. For instance, W.H. testified that he told the police that the drugs were Appellant's. Appellant did not object during W.H.'s testimony. Similarly, Appellant did not make hearsay objections to the many officers who testified to where the drugs were found. Therefore, we find any error in the admission of these statements harmless, as most of the statements were later testified to without objection. Accordingly, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "ASSUMING, ARGUENDO, THAT HARDISON'S HEARSAY STATEMENTS WERE ADMISSIBLE, THE TRIAL COURT'S ADMISSION OF THIS EVIDENCE VIOLATED [APPELLANT'S] RIGHT TO CONFRONT WITNESSES AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE CONSTITUTION OF THE STATE OF OHIO, THEREBY PREJUDICING APPELLANT AND ENTITLING HIM TO A NEW TRIAL."
 {¶ 14} In his second assignment of error, Appellant contends that assuming, arguendo, that these statements were admissible hearsay, the admission violated Appellant's right of confrontation as described by the United States Supreme Court in Bruton v. United States (1968),391 U.S. 123. In light of our decision above, we find this argument without merit.
 {¶ 15} Questions of the scope and effect of constitutional protections, such as the Sixth Amendment, are matters of law and therefore reviewed de novo. See United States v. Wilmore (C.A.9, 2004),381 F.3d 868, 871.
 {¶ 16} The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" The right of confrontation requires, whenever possible, testimony and cross-examination to occur at trial. State v. Allen, 10th Dist. No. 82556, 2004-Ohio-3111, at ¶ 17. The United States Supreme Court held in Crawford v. Washington (2004),541 U.S. 36, that this procedural guarantee applies to both federal and state prosecutions. However, "the Confrontation Clause is simply inapplicable when the `witness' is the accused himself." State v.Lloyd, 2nd Dist. No. 20220, 2004-Ohio-5813, at ¶ 16. As stated above, the statements on the jailhouse recording are admissions of a party opponent and admissions by adoption of a party opponent. Appellant himself would be the witness he demands to cross examine. "If the statements are properly viewed as [A]ppellant's own, there is no confrontation clause issue because [A]ppellant cannot claim that he was denied the opportunity to confront himself." State v.Rivera-Carrillo (Mar. 11, 2002), 12th Dist. No. CA2001-03-054, at *17 citing United States v. Namezian (C.A.9, 1991), 948 F.2d 522, 526. Therefore, we find that the Confrontation Clause does not apply to Appellant's own, non-hearsay, admissions. Lloyd, supra, at ¶ 16. Accordingly, Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "THE VERDICTS RETURNED ON BOTH COUNTS AGAINST [APPELLANT] WERE BASED ON EVIDENCE THAT WAS INSUFFICIENT AS A MATTER OF LAW, WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND THUS VIOLATED [APPELLANT'S] DUE PROCESS RIGHTS, REQUIRING THIS COURT TO OVERTURN BOTH CONVICTIONS."
 {¶ 17} In his third assignment of error, Appellant contends that his convictions were based on insufficient evidence and were against the manifest weight of the evidence. We do not agree.
 {¶ 18} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *4, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390. Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *5.
Therefore, we will address Appellant's claim that his convictions were against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency.
 {¶ 19} When a defendant asserts that his convictions are against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 20} Appellant was convicted of possession of cocaine in violation of R.C. 2925.11(A). Pursuant to R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C.2901.22(B) defines "knowingly" as follows:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 Possession is defined as
 "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).
 {¶ 21} R.C. 2901.21(D)(1) sets forth the requirements for criminal liability and provides: "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."
 {¶ 22} "Possession may be actual or constructive." State v. Kobi
(1997), 122 Ohio App.3d 160, 174. Constructive possession has been defined as "knowingly [exercising] dominion and control over [the drugs], even though [they] may not be within his immediate physical possession." State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. See also, State v. Wolery (1976), 46 Ohio St.2d 316, 329. Furthermore, ownership need not be proven to establish constructive possession.State v. Mann (1993), 93 Ohio App.3d 301, 308. Circumstantial evidence is sufficient to support the elements of constructive possession. SeeState v. Jenks (1991), 61 Ohio St.3d 259, 272-73.
 {¶ 23} Detective Schmidt ("Schmidt") testified on behalf of the State. Schmidt testified that he is a detective with the SNUD unit. As a member of this unit, he was involved in an investigation of the Peckham Street residence. Schmidt stated that through this investigation, he frequently observed the house. According to Schmidt, Appellant was "practically in that neighborhood everyday." He further stated that he "usually [saw] [Appellant] over there every time I'm over there." Schmidt testified that when he interviewed Appellant, Appellant informed him that "he [has] stored drugs in [W.H.'s] room before but the drugs on this occasion did not belong to him. When he has stored drugs, he's told [W.H.] never to touch them."
 {¶ 24} The State also presented testimony from Detective Alan Jones ("Jones"). Jones testified that he was a member of the SNUD unit and participated in the investigation of the Peckham Street residence. On the day of the incident, Jones was assigned to assist with searching the home after a search warrant was obtained. Jones testified that a few days after the search he received a phone call from Appellant's father who informed him that Appellant was going to surrender in reference to the drugs that were recovered from the house. Appellant's father testified and denied having made these statements. Jones further stated that Appellant did turn himself in to authorities. Jones testified that he was present during Appellant's interview by police and Appellant informed the officers that he had hidden drugs in W.H.'s dresser drawer in the past. During Jones' testimony, the State played for the jury a taped jailhouse telephone conversation between Hardison and Appellant. Jones confirmed that the voices on the tape belonged to Hardison and Appellant. During the telephone conversation, Hardison asked Appellant where he was on the day of the incident. Appellant stated that he "was on my way back there to get that shit." Hardison then asked "[t]hey found it in that drawer, didn't they?" Appellant confirmed this. Hardison stated several times later in the conversation, that Appellant "shouldn't have hidden it upstairs." It is clear from this conversation, that Appellant did not deny, and that Hardison believed, the drugs were Appellant's. Finally, Appellant apologized to Hardison, stating, "I'm sorry that you are in there for me though, dog."
 {¶ 25} W.H. testified for Appellant. W.H. was present when the police officers searched the home and found drugs in his dresser drawer. W.H. testified that while he initially told the officers that the drugs were Appellant's, they actually belonged to him. "I lied and said they was my brother's, my brother, [Appellant's]. But it wasn't his, it was mine, `cause my cousin left it in my drawer and told me to watch it." He further told the officers at the scene that Appellant had placed them in the drawer that morning and told him not to touch them. W.H. then stated that Appellant had never hidden drugs in his dresser drawer before. This statement contradicted Appellant's admission to the police that he had stored drugs in the dresser before.
 {¶ 26} The record contained evidence from which the jury could have found that Appellant knowingly possessed the drugs. The jury was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Appellant's conviction was not against the manifest weight of the evidence simply because the jury chose to believe the testimony of the State's witnesses over insinuations that the drugs were placed in the house by a deceased relative. Moreover, "in reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness."Prince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993), 86 Ohio App.3d 29, 33.
 {¶ 27} As the factfinder, the jury was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. SeeDeHass, supra, paragraph one of the syllabus. Therefore, the jury was free to disbelieve W.H.'s testimony that he lied to the officers about the drugs being Appellant's. They further were free to disbelieve him when he stated that Appellant had never hidden drugs there before and to believe the Jones and Schmidt testimony that Appellant told them he had hidden drugs there in the past. We cannot conclude that the trial court clearly lost its way when it found Appellant guilty of possession of cocaine
 {¶ 28} Similarly, we do not find Appellant's conviction for corrupting another with drugs against the manifest weight of the evidence. Under R.C. 2925.02(A)(4)(a),
 "[n]o person shall knowingly * * * [f]urnish or administer a controlled substance to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard[.]"
 {¶ 29} Schmidt testified that on the day in question, W.H. was almost 13 years old. He further testified that Appellant was 25. Therefore, Appellant was more than two years older than his brother. Under this section, there must have been evidence that Appellant knew he was furnishing a controlled substance to juvenile. R.C. 2925.02(A)(4)(a). The trial court instructed the jury that "[f]urnished means provided, supplied or gave access to." Appellant did not object to this definition. Therefore, the jury must find that Appellant was "aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). The jury could infer from the fact that Appellant admitted to officers that he had hidden drugs there before and told W.H. not to touch them that he was aware that W.H. had access to them.
 {¶ 30} Further, as stated above, there was testimony before the jury that Appellant knew the drugs were hidden in W.H.'s dresser drawer. W.H. testified that he took some of the drugs from the drawer and hid it in his shoe, proving that he did, in fact, access the drugs.
 {¶ 31} Based on the foregoing, we cannot find that Appellant's convictions were against the manifest weight of the evidence. As this Court has disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency on these claims. Roberts, supra, at *5. Thus, Appellant's third assignment of error is overruled.
 III. {¶ 32} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
WHITMORE, P. J., and CARR, J. CONCUR
[1] The 12 year-old will be referred to by his initials, W.H. *Page 1