DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Brian Butler, appeals from the decision of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} In the summer of 2005, Appellant, Brian Butler ("Butler"), took his desktop computer to Advanced Computer Services to be repaired. Butler and his wife, Susan, were friends with the owner, Jim Fuller. Fuller determined that the Butlers' computer was not worth repairing and removed and saved the hard drive. The Butlers purchased a laptop. Several months later, Susan asked Fuller to examine the desktop hard drive. Upon examination, Fuller found several videos that he believed contained sexual material involving children. He also examined the Butlers' laptop and uncovered sexual material involving children. Fuller informed Susan of his findings and they decided to send the hard drive and laptop to an attorney. The *Page 2 
attorney contacted the police, and Fuller later contacted the Summit County Sherriff's Department, which began an investigation.
 {¶ 3} During the investigation, the Sherriff's Department computer crimes division uncovered five videos on the hard drive containing sexual material involving what were believed to be children, and located one similar video on the laptop. Both computers contained peer-to-peer software.
 {¶ 4} On January 18, 2008, Butler was indicted on six counts of pandering sexually oriented material involving a minor, in violation of R.C. 2907.322(A)(1)/(2), six counts of pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322(A)(5), and two counts of attempted pandering sexually oriented matter involving a minor, in violation of R.C. 2923.02 and R.C. 2907.322(A)(5). On January 28, 2008, Butler pled not guilty to the charges. On July 29, 2008, the case proceeded to a bench trial. The trial court found Butler guilty on five of the six charges for pandering, in violation of R.C. 2907.322(A)(1), and five of the six charges for pandering, in violation of R.C. 2907.322(A)(5). The trial court found Butler not guilty on the remaining charges. The trial court sentenced Butler to a total of six years of incarceration. Butler timely appealed his convictions and sentence. He has raised three assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT'S DECISION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 3 
 {¶ 5} In his first and second assignments of error, Butler contends that his convictions were against the manifest weight of the evidence and were not based on sufficient evidence. While Butler alleges in his second assignment of error that his conviction was against the manifest weight of the evidence, his supporting argument focuses almost exclusively upon the sufficiency of the evidence presented at trial. His argument as to his second assignment of error neither refers to the credibility of witnesses nor does it request this Court to weigh the evidence. Instead he contends that the State failed to present evidence on an essential element of the crimes. See State v. Thompkins (1997),78 Ohio St.3d 380, 390 (Cook, J., concurring). As such, we read Butler's first two assignments of error as an argument that his convictions were not based on sufficient evidence. See App. R. 16(A)(7). We do not agree with this contention.
 {¶ 6} When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion.Thompkins, 78 Ohio St.3d at 390. To determine whether the evidence in a criminal case was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 7} Butler was convicted of five counts of pandering sexually oriented matter involving a minor, in violation of R.C. 2907.332(A)(1)/(2), and five counts of pandering sexually *Page 4 
oriented matter involving a minor, in violation of R.C. 2907.322(A)(5). This statute states, in pertinent part:
 "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
 "(1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality;
 "(2) Advertise for sale or dissemination, sell, distribute, transport, disseminate, exhibit, or display any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality;
 "***
 "(5) Knowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality[.]" R.C. 2907.322
 {¶ 8} Specifically, Butler contends that the State failed to show that 1) he knew the content of the videos and 2) that he knowingly published or possessed the videos. We do not agree.
 {¶ 9} R.C. 2901.22(B) provides that a person acts knowingly "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
Knowledge of the character of the material and knowingly possess {¶ 10} Butler contends that the State did not show that he ever accessed any of the six video files, and without this evidence, the State failed to prove that he knew of their content. He further contends that the State failed to show that he knowingly possessed these videos. After viewing the evidence in the light most favorable to the State, we conclude that the trial court could have found that the State proved beyond a reasonable doubt that Butler accessed the videos and thus knew their content, and that he knowingly possessed them. *Page 5 
 {¶ 11} Deputy Shane Francis testified that he worked in the Summit County investigations bureau specializing in computer crimes and forensic analysis. He stated that he reviewed Butler's hard drive and laptop. He explained that he first analyzed the contents of Butler's laptop. He found the acronym PTHC on a video string on the laptop. He stated that PTHC was an acronym for "preteen hardcore." He then used this term to further search the laptop and discovered a video entitled "T Vicky." This video contained images of sexual activity involving what he believed to be minors. This video was played for the trial court. Deputy Francis testified that he was able to determine that this video had been downloaded onto the laptop. He could tell through his forensic analysis that the video had been played on the laptop. He explained that "Windows Media Player creates a Windows prefix file which stores information on videos that have been played through Windows Media Player." The "T Vicky" video was located in the prefix and therefore it had been played through Windows Media Player.
 {¶ 12} Deputy Francis further explained that in his forensic analysis he determined that a peer-to-peer program had been used to download this video to the laptop. According to Deputy Francis, a peer-to-peer computer program is
 "a program that you can download on your computer, and if someone else has the same program downloaded on their computer, you can essentially type in a search term in your peer-to-peer program, and it will show you results of people that have the same file for the search term that you're looking for, and you can essentially download the file from them to your computer."
 {¶ 13} Deputy Francis next explained that he searched Butler's hard drive. He explained that he found the terms "pedo," "preteen," "teen," and "Lolita" in a string of video files on the hard drive. He explained that "pedo" was an abbreviation for pedophile, and that Lolita was significant because it is described as a young, precocious girl. Deputy Francis used these terms to further search the computer and discovered five videos that he testified contained sexual *Page 6 
activity involving minors. He testified that he determined that these videos were downloaded through a peer-to-peer program. He stated that in order to download the videos, the user would have to affirmatively enter search terms, review the hits, then select a video to download. He testified that there were no viruses on the computers that would have caused the videos to be downloaded onto the computer without the user's knowledge.
 {¶ 14} The five videos were played for the trial court. Deputy Francis testified to the dates and times that the videos were downloaded. State's exhibit 18, "T Vicky," which correlated to counts one and seven in the indictment, was downloaded on November 3, 2005 at 10:55:31 p.m. State's exhibit 19, which correlated to counts two and eight, was downloaded on July 10, 2004 at 2:22:38 a.m. State's exhibit 20, which correlated to counts three and nine, was downloaded on July 10, 2004 at 1:53:36 a.m. State's exhibit 22, which correlated to counts five and eleven, was downloaded on June 29, 2004 at 10:56:06 a.m. State's exhibit 23, which correlated to counts six and twelve, was downloaded on June 29, 2004 at 10:55:55 a.m. Deputy Francis further testified that he flagged several emails that were sent to bjbutler@neo.rr.com. He specifically presented an email that was sent to this email address on June 29, 2004, and was accessed at 11:31:21 p.m., which was shortly after State's exhibits 22 and 23 were downloaded.
 {¶ 15} Susan Butler, Butler's ex-wife, testified that while she lived with Butler, she only used the two computers once or twice a week. She explained that she would sometimes do some work or play a computer game, but that she never downloaded any pictures or movies to the computers. She testified that Butler was on the computers a lot and that he stayed up late. She stated that she did not stay up late and would typically go to sleep by 10:00 p.m. Susan explained that after Fuller informed her that he found the videos on the computers, she confronted Butler. She testified that *Page 7 
 "[w]e were still in the entryway, and I told him that [Fuller] called me, I had talked to him on the phone, and that they had found child pornography on there; and I asked him how could he possibly be looking at this. And as he walked up the steps I asked him how the hell could you be stupid enough to save it on top of that?"
 {¶ 16} She testified that in response, Butler "turned to me on the landing, and he just shrugged and said I don't know and kept walking."
 {¶ 17} We have previously explained that a statement can be adopted by silence. "`To show that the nondeclarant silently adopted an out-of-court statement, the context of the utterance must indicate that the nonspeaking party understood the statement, was free to disavow it, and did not deny its truth, even though a reasonable person would have done so.'" State v. Hardison, 9th Dist. No. 23050, 2007-Ohio-366, at ¶ 9, quoting State v. Clark (Sept. 8, 1993), 1st Dist. No. C-920603, at * 1, citing Evid. R. 801(D)(2)(b). Viewing the evidence in the light most favorable to the State, we conclude that by shrugging his shoulders, issuing a partial response, and walking away, Butler adopted Susan's statement that he knew there was child pornography on the computer, that he had looked at the videos, and that he saved the videos on the computer. It is clear that Butler understood Susan's statement as he responded both verbally and physically to her questions. Further, he was free to disavow the statement, but did not deny the accusation, even though a reasonable person clearly would have denied knowledge of child pornography. "Therefore, [Butler's] silence in response to these statements amounts to an adoption of the truth of these statements, and thus the statements are admissible as admissions of a party opponent."Hardison, supra, at ¶ 11, citing Clark, supra, at * 1.
 {¶ 18} We conclude that the State presented sufficient evidence showing that Butler accessed the videos and thus knew of the contents and that he knowingly possessed the videos. R.C. 2901.21(D)(1) defines "possession" as "a voluntary act if the possessor knowingly procured *Page 8 
or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."
 {¶ 19} Deputy Francis testified that the computer user would have to affirmatively download the video to the computer and that at least one of the videos had been played through Windows Media Player. Susan explained that Butler was the primary user of the computers and that he often used them late at night. Deputy Francis explained that most of the videos were downloaded late at night and that Butler's email address had been accessed shortly after two of the videos were downloaded. Further, he explained that he found the terms "PTHC," "pedo," "preteen," "teen," and "Lolita" in a string of video files on the hard drive. Finally, Butler adopted Susan's statement that he knew there was child pornography on the computer, that he had looked at the videos, and that he saved the videos. Viewing the evidence in the light most favorable to the State, we conclude that the trial court could have found that the State proved beyond a reasonable doubt that Butler accessed the videos and thus knew their content, and that he knowingly possessed the videos.
Knowingly publish {¶ 20} Butler contends that the State did not show that he knowingly published the videos in violation of R.C. 2907.322(A)(1). We must first determine whether R.C. 2907.322(A)(1) requires the State to prove that Butler knowingly published the videos. We conclude that it does not. R.C. 2907.322 provides, in pertinent part:
 "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
 "(1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality[.]" *Page 9 
 {¶ 21} This section requires the State to prove that Butler knew the character of the material. There is not, however, a knowledge requirement in subsection (1). Id. For comparison purposes, we note that subsection (5) contains a knowledge requirement ("Knowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality[.]"). R.C. 2907.322(A)(1), (A)(5). In 2000, the legislature amended R.C. 2907.322(A) in part, to add the word "knowingly" to subsection (5). Had the legislature intended to require proof that a person knowingly created, recorded, photographed, filmed, developed, or published the materials, the legislature could have similarly amended subsection (1) to add the word "knowingly." As it has not, we decline to read this requirement into the express language of the statute.
 {¶ 22} Because subsection (1) does not specify any degree of culpability, the degree of culpability required to commit the offense is recklessness. State v. Young (1988), 37 Ohio St.3d 249, 253.
 "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).
 {¶ 23} Although Butler specifically contends that the State failed to provide sufficient evidence that he published the videos, Butler was convicted of violating R.C. 2907.322(A)(1) in its entirety, meaning the State could have presented evidence that he created, recorded, photographed, filmed, developed, reproduced, or published the materials. As such, we are not limited to the argument in Butler's brief to conclude that his conviction was based on sufficient evidence. These terms are not defined in R.C. 2907.01, and "`in the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the *Page 10 
interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used.'" State v. Bates, 5th Dist. No 08 CA 15, 2009-Ohio-275, at ¶ 77, quoting Wachendorf v.Shaver (1948), 149 Ohio St. 231.
 {¶ 24} In discussing R.C. 2907.322(A)(1), the First District has explained that "[t]he state can prove that an offender reproduced [child pornography] by presenting evidence that the offender downloaded images from the Internet onto a hard drive." State v. Kraft, 1st Dist. No. C-060238, 2007-Ohio-2247, at ¶ 92, citing State v. Huffman,165 Ohio App.3d 518, 2006-Ohio-1106, at ¶ 49. We have recounted above that Deputy Francis explained how a user would have had to affirmatively download the videos from a peer-to-peer program and that the videos were not placed on the computer by way of a computer virus. Further, Susan testified that she did not download videos to the computer and that Butler primarily used the computer. This permits the inference that Butler downloaded the videos. Accordingly, we conclude that the State provided sufficient evidence that Butler recklessly reproduced the videos. This conclusion is supported by the sufficiency of the evidence under R.C. 2907.332(A)(1).
 {¶ 25} Although we have determined that the State presented sufficient evidence regarding reproduction, we will address Butler's argument that in order to prove that he published the videos, the State was required to show that a third party could have accessed, and in fact did access, the video files. In his brief, Butler offers several definitions of "publish" that contradict his contention that a third party had to actually view the videos. The definitions Butler cites indicate that to publish is to make the information available to the public. Black's Law Dictionary defines "publish," in part, "[t]o distribute copies (of a work) to the public." Black's Law Dictionary (8th Ed. 2004) 1268. We find no support for Butler's contention that to satisfy the publication requirement, the State must show that someone must have actually *Page 11 
accessed the videos. Accordingly, we conclude that we must determine if the State provided sufficient evidence that Butler made the information available to the public, in other words, that a third party couldhave accessed the files. We conclude that it did.
 {¶ 26} Deputy Francis testified that the videos in question could be accessed by others because they were downloaded through a peer-to-peer program. He explained that the video files were stored in a folder of the peer-to-peer program called "My Share." By storing the videos in the "My Share" folder, Butler was "allowing others to type in key words and possibly copy the video [to] your hard drive." He explained that the "My Share" folder "is the default area that once your download is complete, it goes straight into the My Share folder." Finally, Deputy Francis testified that he determined that the videos in question were in the "My Share" folder on Butler's computers and that the default setting on peer-to-peer networks is to share the files. We conclude that the trial court could infer that by downloading the peer-to-peer program to his computers and using it to download videos himself, Butler was reckless in allowing the videos to remain in his "My Share" folder, where they could be accessed by others. Viewing the above testimony in conjunction with our determination that Butler knew the contents of the videos and knowingly possessed them, we conclude that when viewing the evidence in the light most favorable to the State, the trial court could find that Butler recklessly published the videos. Accordingly, we conclude that the State presented sufficient evidence on this element.
 {¶ 27} Butler's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED WHEN IT SENTENCED [BUTLER] FOR MULTIPLE OFFENSES OF PANDERING IN SEXUALLY ORIENTED MATTER ON COUNTS ONE (1) AND SEVEN (7), TWO (2) AND EIGHT (8), THREE (3) AND NINE (9), FIVE (5) AND ELEVEN (11), SIX (6) AND TWELVE (12) IN CONTRAVENTION OF R.C. 2941.25." *Page 12 
 {¶ 28} In his third assignment of error, Butler contends that the trial court erred when it sentenced him for multiple offenses of pandering in sexually oriented matters in contravention of R.C. 2941.25. We do not agree.
 {¶ 29} Butler concedes that he did not object to his sentences on this basis. Therefore, he has forfeited this issue on appeal. Typically, if a party forfeits an objection in the trial court, reviewing courts may notice only "[p]lain errors or defects affecting substantial rights[.]" Crim. R. 52(B). Pursuant to Crim. R. 52(B), a plain error or defect that affects a substantial right may be noticed although it was not brought to the attention of the trial court. "A plain error must be obvious on the record, such that it should have been apparent to the trial court without objection." State v. Kobelka (Nov. 7, 2001), 9th Dist. No. 01CA007808, at *2, citing State v. Tichon (1995), 102 Ohio App.3d 758,767. As notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice, the decision of a trial court will not be reversed due to plain error unless the defendant has "established that the outcome of the trial clearly would have been different but for the alleged error." Kobelka, supra, at *2, citingState v. Waddell (1996), 75 Ohio St.3d 163, 166, and State v.Phillips (1995), 74 Ohio St.3d 72, 83. While Butler asserts plain error, he fails to cite to any case law to support his argument that it is applicable here. App. R. 16(A)(7).
 {¶ 30} The State argues that because the trial court sentenced Butler to concurrent sentences, he cannot demonstrate plain error. We have previously held that "`plain error does not exist when concurrent sentences are imposed for crimes that constitute allied offenses of similar import.'" State v. Wharton, 9th Dist. No. 23300, 2007-Ohio-1817, at ¶ 7, quoting State v. Iacona (Mar. 15, 2000), 9th Dist. No. CA2891-M, at *22; See, also, State v. Martin (Feb. 9, 1999), 9th Dist. No. 18715, at *2. As such, we conclude that Butler has failed to demonstrate *Page 13 
prejudice. Even if the trial court erred by failing to merge the counts, the trial court imposed concurrent sentences and therefore, his sentence would remain the same. See Wharton, supra.
 {¶ 31} Accordingly, Butler's third assignment of error is overruled.
 III. {¶ 32} Butler's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
WHITMORE, J., DICKINSON, J., CONCUR. *Page 1