[Cite as *State v. Feliciano*, 2012-Ohio-6149.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

JOHN B. FELICIANO

    Appellant

C.A. No.     11CA010053

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    10CR080051

DECISION AND JOURNAL ENTRY

Dated: December 28, 2012

---

MOORE, Presiding Judge.

{¶1} Defendant-Appellant, John Feliciano, appeals from his sentence and conviction as set forth in the July 19, 2011 judgment entry of the Lorain County Court of Common Pleas. For the following reasons, we affirm.

I.

{¶2} S.H., a minor child, regularly spent time at Jonathan and Sabrina Feliciano's (collectively "the Felicianos") house. In February of 2010, S.H. went sledding with her father, her fifteen year-old neighbor C.D., the Felicianos, and their two young children. After sledding, she and C.D. went over to the Felicianos' house to watch television. Mr. Feliciano, Jonathan's father, was also present. S.H. sat on the couch between C.D. and Mr. Feliciano. While watching television, S.H. alleged that Mr. Feliciano reached over and rubbed her stomach, and then rubbed her vagina. At the time of the incident, S.H. was ten years old.

{¶3}   Mr. Feliciano was indicted for gross sexual imposition, in violation of R.C. 2907.05(A)(4), with a sexually violent predator specification.  He pleaded not guilty, and the matter proceeded to jury trial on the charge of gross sexual imposition.  Mr. Feliciano waived his right to a jury trial on the sexually violent predator specification, and the matter was subsequently heard by the trial court.

{¶4}   The jury found Mr. Feliciano guilty of gross sexual imposition, a third degree felony.  In addition, the trial court found him to be a sexually violent predator.  Mr. Feliciano was sentenced to four years to life imprisonment.

{¶5}   Mr. Feliciano timely appealed and set forth four assignments of error for our consideration.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN WHOLLY PRECLUDING THE DEFENSE FROM CALLING IT'S ONLY WITNESS, OF WHOM THE STATE WAS AWARE, IN VIOLATION OF BOTH THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AS WELL AS SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION[.]

{¶6}   In his first assignment of error, Mr. Feliciano argues that the trial court erred in precluding the testimony of Detective Carpentiere as a sanction for an alleged violation of the rules of discovery.  Specifically, Mr. Feliciano argues that, although the detective was not listed as a potential witness in discovery, prohibiting his testimony was not the appropriate sanction.

{¶7}   In response, the State contends that the sanction was proper because Mr. Feliciano's attorney, Mr. Stepanik, (1) failed to provide a witness list pursuant to Crim.R. 16, (2) failed to lay a proper foundation for the impeachment of the State's witnesses, (3) and failed to proffer the details of Detective Carpentiere's testimony to the trial court.

{¶8} "Although a criminal defendant has the right to present witness testimony on his behalf, a trial court may 'exclude such evidence when the orderly administration of justice is threatened by the accused's failure to promptly disclose witnesses.'" *State v. Calise,* 9th Dist. No. 26027, 2012-Ohio-4797, ¶ 30, quoting *State v. Moon*, 74 Ohio App.3d 162, 169 (9th Dist.1991). "The rules of discovery, and more specifically Crim.R. 16, imbue trial courts with the discretion to exclude testimony that is not disclosed in a timely manner in order to prevent surprise and ensure a fair trial." *Calise* at ¶ 30, citing *State v. Barrios*, 9th Dist. No. 06CA009065, 2007-Ohio-7025, ¶ 18. "Exclusion is a permissible sanction 'as long as it would not completely deny the defendant his constitutional right to present a defense.'" *Barrios* at ¶ 18, quoting *State v. Sinkfield*, 2d Dist. No. 18663, 2001 WL 1517314, *8 (Nov. 30, 2001). Because a trial court's decision to exclude testimony is a discretionary one, we review a court's decision to exclude evidence under an abuse of discretion standard of review. *Barrios* at ¶ 18. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶9} We look to the Supreme Court of Ohio's decision, *Lakewood v. Papadelis*, 32 Ohio St.3d 1 (1987), for guidance with this matter. In *Papadelis* at paragraph two of the syllabus, the Court stated that "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." Further, the Court noted that "'[t]he philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial.'" *Papadelis* at *3, quoting *State v. Howard*, 56 Ohio St.2d 328, 333 (1978). As such, "[t]he purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial." *Papadelis* at *3.

{¶10} *Papadelis* also sets forth a list of factors to be considered by the trial court prior to issuing a sanction, including: "the extent to which the prosecution will be surprised or prejudiced by the witness' testimony, the impact of witness preclusion on the evidence at trial and the outcome of the case, whether violation of the discovery rules was willful or in bad faith, and the effectiveness of less severe sanctions." *Id*. at *5.

{¶11} In the present matter, it is undisputed that defense counsel did not comply with the State's request for discovery. The Prosecutor indicated that she had asked counsel to file discovery at their last hearing, but he never filed any discovery or reciprocal discovery. Further, defense counsel admitted that, although he did not provide the State with a witness list, he contemplated the possibility of calling Detective Carpentiere to testify as an impeachment witness. Defense counsel proffered that the only thing he wanted to ask Detective Carpentiere was "whether the statements that were represented to have even been made or not made by [S.H. and C.D.] are in fact true."

{¶12} Defense counsel indicated that he verbally informed the Prosecutor that he might call Detective Carpentiere as a witness. However, the Prosecutor denied being put on notice regarding defense counsel's intentions. In addressing defense counsel, the trial court stated:

\* \* \*

I guess maybe that is the troubling thing is that you thought there was a possibility you might call a witness, and yet you *chose* never to file any discovery, not even the most basic that almost every attorney I've ever seen files, even when they don't plan a case, any witness on the Prosecutor's witness list or any that may be adduced at a later time and informed of to the State.

But what you are telling me is that you anticipated the possibility of calling Detective Carpentiere.

\* \* \*

And I've got to be honest with you. The whole point of the changes in the Rules of Discovery were [sic] to remove the concept of gamesmanship. To provide notice through the Court.

\* \* \*

I'm not going to put \* \* \* on that type of gamesmanship.

\* \* \*

You can decide you are not going to give any witnesses, but then you can [sic] decide in the middle of trial that you are going to call somebody in your case in chief when you have provided no witnesses.

\* \* \*

(Emphasis added.)

As to the verbal notice issue, the court said:

Once again, [Mr. Stepanik], I'm not disputing that you said that. [The Prosecutor] doesn't remember that. But be that as it may, all that indicates to me is that you had prior knowledge that you might call him and provided no written notice as required and chose at this point for your case in chief to call somebody from the other side who you gave no notice of their being a witness for your side.

So, that being said, I'm going to deny your request to call Detective Carpentiere based on the Rules of Discovery. I don't think I even have to get to the inconsistent statement question at this point, though I think there is a strong chance that you would, even if given notice, you would have had a difficult time getting that evidence out based on the foundation that was laid during the cross-examination.

\* \* \*

{¶13} Unlike the attorney in *Papadelis*, defense counsel in this case did not proffer the specifics of Detective Carpentiere's anticipated testimony. In *Papadelis* at \*5, the appellant's attorney proferred that the first witness would have testified that:

[H]e inspected the boiler located in the building on the date the violation allegedly occurred. He found the boiler was set at seventy-five degrees and that it was fully operational. He would have further testified that heat was being adequately provided. Additionally, he would have explained that he went to Cinema Transit, the tenant that had complained about the heat, and found the building to be cool; that he brought the fact that the garage doors in the back had been left open all

day to the attention of individuals at Cinema Transit; and that he had questioned them on a number of occasions and told them it was difficult to provide heat to these premises when the garage doors were left open because the building was not well insulated.

The second witness would have testified "that she saw the garage doors open on February 6 and 7." *Id.*

{¶14}     Here, the record indicates that defense counsel merely advised the trial court that he planned to use the detective's testimony to offset the prior inconsistent statements of S.H. and D.C. In addition, he alleged, without further explanation, that "[t]he witnesses have made several statements which are not accurate[.]"

{¶15} Because the trial court was not apprised of Detective Carpentiere's anticipated testimony, it could not fully consider and weigh all of the factors set forth in *Papadelis*, including: the extent to which the State would be surprised or prejudiced by the detective's testimony, the impact of precluding the detective's testimony on the evidence at trial and the outcome of the case, and the effectiveness of less severe sanctions. However, even with limited information, the trial court's colloquy indicates that it did inquire into the circumstances surrounding this discovery rule violation. *See Papadelis* at paragraph two of the syllabus. In doing so, the trial court concluded that (1) the State was not put on notice of defense counsel's intention to call Detective Carpentiere as a witness, (2) defense counsel chose not to file even the most basic form of discovery, (3) Detective Carpentiere's testimony would likely be excluded for other procedural reasons, and (4) permitting the testimony would encourage gamesmanship in violation of the spirit of the criminal rules. Therefore, based upon the record before us, we cannot say that the trial court abused its discretion in excluding Detective Carpentiere's testimony.

{¶16}  Mr. Feliciano's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN DENYING [MR.] FELICIANO'S MOTIONS FOR JUDGMENT OF ACQUITTAL AS THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE OF GUILT[.]

{¶17} In his second assignment of error, Mr. Feliciano challenges the sufficiency of the State's evidence. Specifically, Mr. Feliciano argues that: (1) pursuant to R.C. 2907.01(B), the State did not put on any evidence that the alleged touching of S.H. was done for the purpose of sexually arousing or gratifying either person, (2) two out of three the State's witnesses, C.D. and Sabrina Feliciano, did not actually see any inappropriate touching of S.H., and (3) the State told S.H. to use the word "vagina" on the witness stand.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. *See also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Id*.

{¶18} Mr. Feliciano was convicted of one count of gross sexual imposition in violation of R.C. 2907.05(A)(4). R.C. 2907.05(A)(4) states that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." Further, "'[s]exual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶19} In *State v. Clay*, 9th Dist. No. 04CA0033-M, 2005-Ohio-6, this Court addressed the issue of sexual arousal or gratification, stating that "[t]here is no requirement that there be direct testimony regarding sexual arousal or gratification." Further, "[i]n the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer from the evidence that [the appellant's] purpose was such from the 'type, nature and circumstances of the contact, along with the personality of the [appellant].'" *Id.*, quoting *State v. Cobb*, 81 Ohio App.3d 179, 185 (9th Dist.1991).

{¶20} Here, in describing the incident, S.H. testified as follows:

* * *

Q. What did you do when you got into the house?

A. We just sat down and watched TV.

Q. Who was sitting watching TV with you?

A. [Mr. Feliciano and C.D.]

* * *

Q. Tell me when you were sitting—where were you sitting on the couch?

A. I was sitting in the middle.

* * *

Q. And what happened next?

* * *

A. [Mr. Feliciano] rubbed my stomach.

Q. He rubbed your stomach. Okay. Did he rub your stomach over your clothes? Under your clothes?

A. Over.

Q. What were you wearing?

A. I was wearing pajamas.

Q. Did you have anything else on?

A. A sweatshirt.

Q. Okay. Did you have anything else on besides—

A. And a blanket.

Q. A blanket?

A. Yes.

Q. Who was the blanket covering?

A. Me.

* * *

Q. Okay. So when he rubbed your stomach, how did that make you feel?

A. Like, scared.

Q. Okay. Did he say anything to you when he rubbed your stomach?

A. No.

Q. No? Did you say anything back to him?

A. No.

* * *

Q. Okay. Then what happened after that?

A. Then he reached back over to his side.

* * *

Q. Okay. Were you still watching TV after that?

A. Yeah.

Q. Then what happened next?

A. And then he reached over and touched my vagina, then went back over to his side.

Q. Okay. Was the blanket still on your lap?

A. Yes.

Q. Okay. What did he do when he touched your vagina?

A. He, like, rubbed it and then went back over to his side.

Q. Do you remember how you felt when he did that?

A. Scared.

Q. Tell us what happened after that happened. What did you do next?

A. I got up and went in J.J.'s room.

* * *

Q. How soon after he did that did you get up and go in the room?

A. Like, right after that.

Q. Do you remember why you wanted to go in the room?

A. Because I was just scared.

* * *

Q. And [C.D.] came in the room?

A. Yes.

Q. What were you doing when [C.D.] got into the room?

A. We were just sitting there, and he asked me why I came in. Then I told him.

Q. What did you tell him?

A. I told him what happened.

* * *

Q. Did anybody else come into the room after that?

A. [Mr. Feliciano] came in. And then he patted my head and said he had a few, then he ran out.

* * *

Q. What happened next? What happened after [Mr. Feliciano] left?

A. Then C.D. went and told Sabrina.

Q. Okay. And what did Sabrina do?

A. Sabrina started crying.

Q. Did she do anything else?

A. Yeah. She got up and put her coat and shoes on and went to go tell my mom.

* * *

Q. How old were you when that happened?

A. I was 10.

* * *

In addition, C.D. testified that when S.H. got up from the couch, Mr. Feliciano "grabbed her side," in a "ticklish motion." C.D. described this gesture as "sexual." Further, he testified that when he went into the bedroom to check on S.H., she looked at him and started to cry. The following testimony ensued:

* * *

Q. Tell us what happened next.

A. She told me he had touched her.

Q. Okay. Did you know where he had touched her?

A. She pointed down there.

Q. Where did she point?

A. Down to her area down there.

Q. Did she say anything else?

A. That's all she told me, and then she busted out in tears.

* * *

Q. When you were in the bedroom with S.H., did you see [Mr. Feliciano] again?

A. Yes, I did.

Q. Where did you see him?

A. He walked back into the bedroom.

Q. What did he do?

A. He patted [S.H.] on the head and then told her that if he did anything offensive, that he's had a few.

\* \* \*

**{¶21}** As stated above, the jury may infer from the evidence that Mr. Feliciano's purpose in touching S.H. was for arousal or sexual gratification. S.H. was 10 years old at the time of this incident, she was wearing pajamas, and she had a blanket covering her lap when Mr. Feliciano reached over and rubbed her vagina. As such, in viewing the evidence in a light most favorable to the prosecution, there is sufficient evidence to sustain Mr. Feliciano's conviction for gross sexual imposition. *See Jenks* at paragraph two of the syllabus.

**{¶22}** Further, we decline to address Mr. Feliciano's arguments that Sabrina and C.D. did not actually see Mr. Feliciano touch S.H., and that the prosecutor told S.H. to use the word "vagina" instead of "bad area." Because these arguments rest on the credibility of Sabrina, C.D., and S.H., they are challenges to the weight of the evidence, not the sufficiency.

**{¶23}** Mr. Feliciano's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

[MR.] FELICIANO'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

**{¶24}** In his third assignment of error, Mr. Feliciano argues that his convictions are against the manifest weight of the evidence. Specifically, Mr. Feliciano contends that (1) no one testified that he had performed any act in a sexual manner, and (2) the alleged offense took place in plain view, and in close proximity, of several individuals.

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. The court's "discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction." *Otten* at 340. *See also State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶25} In addition, "[t]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The fact-finder "is free to believe all, part, or none of the testimony of each witness." *State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35.

{¶26} In its charge to the jury, the trial court instructed:

You are not required to believe the testimony of any witness simply because he or she was under oath.

You may believe or disbelieve all or part of the testimony of any witness.

It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief.

{¶27} Here, the jury clearly believed S.H.'s testimony that she was sitting on the couch, in her pajamas, with a blanket on her lap, and Mr. Feliciano reached over and rubbed her vagina.

It was reasonable for the jury to infer that, because S.H. had a blanket covering her lap, even individuals in close proximity may not have seen Mr. Feliciano rub her vagina. Further, as stated above, the jury can infer arousal or sexual gratification from the evidence presented at trial.

{¶28} Additionally, we are not swayed by Mr. Feliciano's argument regarding S.H.'s use of the word "vagina." During cross-examination, the jury heard S.H. testify that the prosecutor told her to use the word "vagina", and also that the prosecutor explained what the word meant. Further, on redirect, S.H. testified:

Q. S.H., do you have a word that you call your vagina?

A. No.

Q. What do you call it?

A. Just bad area.

Q. You call it a bad area?

A. Yes.

Q. And is that the area [Mr. Feliciano] touched?

A. Yes.

As trier of fact, the jury was free to believe all, some, or none of S.H.'s testimony. Clearly, in spite of the fact that S.H. admitted that "vagina" was not a word she used, the jury believed S.H.'s testimony regarding the incident at the Felicianos' house.

{¶29} It is well-settled that "'there is no requirement, statutory or otherwise, that a victim's testimony be corroborated as a condition precedent to a conviction.'" *State v. Garfield*, 9th Dist. No. 09CA009741, 2011-Ohio-2606, ¶ 27, quoting *State v. Adams,* 9th Dist. No. 05CA008685, 2005-Ohio-4360, ¶ 13, citing *State v. Sklenar*, 71 Ohio App.3d 444, 447 (9th Dist.1991). Based upon the record before us, and specifically the testimony of S.H., we cannot

say that the jury clearly lost its way in finding Mr. Feliciano guilty of gross sexual imposition. Therefore, we conclude that his conviction is not against the manifest weight of the evidence.

**{¶30}** Mr. Feliciano's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN DENYING [MR.] FELICIANO'S MOTION FOR A MISTRIAL[.]

**{¶31}** In his fourth assignment of error, Mr. Feliciano argues that the trial court should have granted his motion for a mistrial because a newspaper was found in the jury room with the headline: "[t]rial begins for sex offender accused of touching 10-year-old[.]"

**{¶32}** "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "The essential inquiry on a motion for a mistrial is whether the substantial rights of the accused are adversely affected." *State v. Wooden*, 9th Dist. No. 21138, 2003-Ohio-1917, ¶ 33, quoting *Wadsworth v. Damberger*, 9th Dist. No. 3024-M, 2000 WL 1226620, *2 (Aug. 30, 2000). "Due to the variety of circumstances in which mistrial may emerge, great deference must be given by a reviewing court to the trial court's discretion as the trial court judge is in the best position to assess the situation and determine whether a mistrial is appropriate." *Wooden* at ¶ 33, citing *State v. Glover*, 35 Ohio St.3d 18, 19 (1988). Further, "[a] trial court's ruling on a motion for mistrial will be reversed only for an abuse of discretion." *Wooden* at ¶ 33, citing *Damberger*, citing *State v. Stewart*, 111 Ohio App.3d 525, 533 (9th Dist.1996). "The term 'abuse of discretion' connotes * * * that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). When applying the abuse of discretion standard, an appellate court may not substitute its

judgment for that of the trial court. *In re T.A.F.*, 9th Dist. No. 09CA0046-M, 2010-Ohio-3000, ¶ 11.

**{¶33}** Mr. Feliciano does not cite *any* legal authority in support of this assignment of error. It is well settled that, as the appellant, Mr. Feliciano has the burden on appeal. *See* App.R. 16(A)(7); Loc.R. 7(B)(7). "It is not the function of this [C]ourt to construct a foundation for [Mr. Feliciano's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist.1996). Therefore, we decline to conduct a detailed analysis regarding this challenge.

**{¶34}** However, in review of the record, we note that the trial court handled this situation by questioning two jurors, under oath, regarding whether they saw or read anything pertaining to Mr. Feliciano's case. Both jurors testified that they neither saw, nor read, any article regarding Mr. Feliciano's case. In addition, one juror testified that the newspaper was not shared with anyone in the jury pool. As such, we cannot say that the trial court abused its discretion in denying Mr. Feliciano's motion for a mistrial.

**{¶35}** Mr. Feliciano's fourth assignment of error is overruled.

### III.

**{¶36}** In overruling Mr. Feliciano's four assignments of error, we affirm the decision of the Lorain County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶37} I concur in judgment only based on the fact that Mr. Feliciano did not proffer what Detective Carpentiere's testimony would have been, and therefore cannot establish prejudice.

BELFANCE, J.
CONCURRING IN PART AND DISSENTING IN PART.

{¶38} I concur that Mr. Feliciano's conviction is supported by sufficient evidence. However, I respectfully dissent because I cannot conclude that the trial court made the necessary

inquiry or considered imposing the least severe sanction as required by *Lakewood v. Papadelis*, 32 Ohio St.3d 1 (1987).

{¶39} "A trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Papadelis* at paragraph two of the syllabus. The appropriateness of a sanction entails a "balancing test" between the State's interests and the defendant's constitutional rights. *Id*. at 5.

> Factors to be considered by the trial court include the extent to which the prosecution will be surprised or prejudiced by the witness' testimony, the impact of witness preclusion on the evidence at trial and the outcome of the case, whether violation of the discovery rules was willful or in bad faith, and the effectiveness of less severe sanctions.

*Id*.

{¶40} In *Papadelis*, the defendant sought to call two fact witnesses. However, in contravention to the criminal rules, he did not file a witness list, and the trial court excluded both of the defendant's witnesses. The Supreme Court noted that, because the trial court had excluded all of the defendant's witnesses, "the effect of the sanction of exclusion imposed on Papadelis was to deny him the right to present a defense." *Id*. This case presents the same problem because the effect of the court's sanction was to deny Mr. Feliciano the right to present his sole defense witness under circumstances where the witness was well-known to the State and where the trial court did not even consider the possibility of a lesser sanction.

{¶41} In the case at hand, after the State rested, Mr. Feliciano sought to call Detective Carpentiere to testify. The State objected, arguing that Mr. Feliciano had not filed a witness list as required by Crim.R. 16(L) and, therefore, he should not be allowed to call the officer. Notably, the State did not argue that it would suffer any prejudice from Detective Carpentiere

testifying, instead relying completely on a procedural argument. Mr. Feliciano's counsel admitted that he did not submit a witness list but claimed that he had informed the prosecutor that he could possibly call Detective Carpentiere as a rebuttal witness. The trial court remarked that it did not doubt counsel had told the prosecutor but the prosecutor had no recollection of being informed. The court noted that Crim.R. 16 was designed "to remove the concept of gamesmanship[]" and that it would not "put the Court's [approval] on that type of gamesmanship." It subsequently determined that Mr. Feliciano could not call Detective Carpentiere.

{¶42} *Papadelis* stands for the proposition that, notwithstanding a clear failure follow discovery rules, the trial court must nonetheless engage in a balancing test where it balances the state's interests against the defendant's constitutional rights. It is evident from the record in this case that the trial court did not conduct the inquiry or engage in the balancing of interests required by *Papadelis*. It did not consider the prejudice to the State if Mr. Feliciano was allowed to call Detective Carpentiere. In fact, there was no discussion of potential prejudice to the State at all. Even though the witnesses were unknown to the prosecution in *Papadelis*, the Supreme Court nonetheless determined that the exclusion of the witnesses was an improper sanction. Unlike *Papadelis*, in this case Detective Carpentiere was the lead investigating officer in this case and appears to have sat with the prosecutor throughout the trial. Thus, he was not a surprise witness to the prosecution. *Compare State v. Moon*, 74 Ohio App.3d 162, 169-170 (9th Dist.1991).

{¶43} More concerning, however, is that the court gave no indication that it considered any sanction other than excluding Mr. Feliciano's only witness, a fact the lead opinion implicitly recognizes. One critical portion of the holding in *Papadelis* is that a trial court "must impose the

least severe sanction that is consistent with the purpose of the rules of discovery." *Papadelis*, 32 Ohio St.3d at paragraph two of the syllabus; *see also id.* at 3 ("The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party."). The exclusion of witnesses is obviously the most severe sanction given that it may infringe upon a criminal defendant's Sixth Amendment right to present a defense, particularly where all of the defendant's witnesses are excluded." *Id.* Thus, "[before imposing the sanction of exclusion, the trial court must find that no lesser sanction would accomplish the purpose of the discovery rules and that the state would be prejudiced if the witness[es] were permitted to testify." *Id.* Although the *Papadelis* court recognized that the State's interest in pretrial discovery may be compelling, the court concluded that any infringement on a defendant's constitutional rights caused by the sanction must be afforded great weight. "Consequently, a trial court must impose the least drastic sanction possible that is consistent with the state's interest." *Id.* For example, if a short continuance is feasible and would allow the state sufficient opportunity to minimize any surprise or prejudice, this alternative sanction should be imposed. *See id.* at 5. In addition, "[e]ven citing defense counsel for contempt could be less severe than precluding all of the defendant's testimony." *Id.* This would enable the court to punish counsel's behavior which is beyond the defendant's control. *See State v. Wilmoth*, 104 Ohio App.3d 539, 545 (11th Dist.1995) (noting that the sanction of excluding a witness can punish the defendant for behavior of defense counsel over which defendant has no control while allowing counsel to go unpunished). In this case, there is simply no indication that the trial court balanced the parties' respective interests, nor was there any consideration of any sanction other than the exclusion of the witness.

{¶44} The lead and concurring opinions suggest that the trial court was relieved of its duty under *Papadelis* where there is not a detailed proffer of the potential testimony. However,

it is apparent that the reasoning of the *Papadelis* court did not hinge upon the presence of a proffer of the potential testimony. Indeed, counsel in that case did not proffer any testimony prior to the trial court's determination to exclude the witnesses. *Papadelis* places an affirmative duty upon the trial court to inquire into the circumstances and ultimately balance the state's interest against the defendant's Sixth Amendment right to present a defense. As in *Papadelis*, in this case, "[t]he trial court did not indicate that it balanced the state's interests against [Mr. Feliciano's] Sixth Amendment right to present a defense by considering any sanction other than excluding the testimony of his witness." *Id*. In light of this apparent failure to comply with the requirements set forth in *Papadelis*, the judgment of the court should be reversed.

{¶45} Accordingly, I would sustain Mr. Feliciano's first assignment of error, which would render his third and fourth assignments of error moot, and would remand for further proceedings.

APPEARANCES:

MICHAEL E. STEPANIK, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.