[Cite as *State v. Price*, 2015-Ohio-5043.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 14CA0070-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRANDON PRICE | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 13CR40528 |

DECISION AND JOURNAL ENTRY

Dated: December 7, 2015

SCHAFER, Judge.

{¶1} Defendant-Appellant, Brandon Price, appeals the judgment of the Medina County Court of Common Pleas convicting him on pandering sexually oriented matter involving a minor and imposing a total prison term of two years. For the reasons that follow, we affirm the trial court's judgment.

I.

{¶2} Price was indicted on five counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(1), a felony of the second degree. The indictment resulted from a police investigation that revealed the sharing of child pornography via a peer-to-peer computer program, Ares, that originated from an Internet Protocol address in Brunswick, Ohio. Investigators downloaded computer files containing child pornography from this IP address on five different occasions. They subsequently obtained a search warrant for the physical address in Brunswick associated with the IP address.

{¶3}  Upon execution of the warrant, police discovered a Samsung laptop in the house's upstairs bathroom.  Investigators opened the laptop, which was warm to the touch, and saw three open screens: (1) one for a social media website; (2) one for an adult pornography website; and (3) one for Ares.  The Ares screen was maximized behind the other two screens and it was running an active search for a term that is associated with child pornography.  The police seized the laptop for further forensic analysis.  This analysis revealed that the laptop contained a file for Price's resume and pictures of Price with a woman that included the caption "the fiancée and I."  It also showed that Price's name was featured in the computer's search history over several thousand times.  From this forensic examination as well as other investigations, police concluded that Price was the primary user of the Samsung laptop.

{¶4}  After a bench trial, Price was found guilty on all five counts.  The trial court subsequently sentenced Price to two years on each count.  The trial court ordered that the sentences run concurrently.  Price filed this timely appeal, presenting four assignments of error for our review.  Since his third assignment of error implicates the proper scope of the evidence admitted at trial, we elect to address it first.  We also elect to address the first and second assignments of error together since they implicate similar issues.

II.

### Assignment of Error III

**The Court improperly denied Defendant's objection to allowing Officer Hayest to testify at trial even though Officer Hayest was not listed on [the] State's witness list.**

{¶5}  In his third assignment of error, Price argues that the trial court erred when it allowed Officer Gregory Hayest of the Brunswick Police Department to testify despite not being

included on the State's witness list. However, since Price did not properly preserve this issue for appellate review, we disagree.

{¶6} Crim.R. 16 governs discovery during criminal proceedings. *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 428 (1994). Crim.R. 16(I) provides that each party must "provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal." The failure to comply with this requirement allows the trial court to "grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1). When fashioning an order under Crim.R. 16(L)(1), trial courts may only "impose the least severe sanction" to remedy the discovery violation. *Lakewood v. Papadelis*, 32 Ohio St.3d 1 (1987), paragraph two of the syllabus.

{¶7} "Sanctions for a Crim.R. 16 discovery violation are within the discretion of the trial court." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 20. Accordingly, we generally review a trial court's order regarding Crim.R. 16 discovery violations for an abuse of discretion. *E.g.*, *State v. Feliciano*, 9th Dist. Lorain No. 11CA010053, 2012-Ohio-6149, ¶ 8. However, the failure to properly object to evidence on the basis of a Crim.R. 16 violation operates as a forfeiture of all but plain error on appeal. *See State v. Payne*, 9th Dist. Summit No. 26655, 2013-Ohio-5230, ¶ 10 (determining that the defendant forfeited all but plain error in trial court's admission of evidence that was purportedly not disclosed during discovery in violation of Crim.R. 16).

{¶8}   Price originally objected to Officer Hayest's testimony on the basis of a Crim.R. 16 violation.   After stating his objection, the following dialogue occurred between Price's trial counsel and the trial court:

> The Court: Well, there's a couple of things I could do here.  One is I could bar the witness from testifying.  I'm probably not going to do that.
> Two, I can give you a recess and you can discuss with [Officer Hayest] what this witness is going to do and we'll see if you want a continuance.

> [Trial Counsel]: That's the way to go.

The trial court then entered a recess as requested by Price's trial counsel.  After the recess, the discussion between Price's trial counsel and the trial court continued as follows:

> The Court: [Trial counsel], were you able to satisfy yourself?

> [Trial Counsel]: Yes, Judge.

> The Court: So you're no longer objecting to him being called?

> [Trial Counsel]: I think it's a moot point.

> The Court: You don't want a continuance?

> [Trial Counsel]: Well, I'd love to but you're not going to bar him.

> The Court: I'm not going to bar him but if you want a continuance, I'll be glad to give you a continuance.

> [Trial Counsel]: Oh, no.

> The Court: You don't want a continuance?  You don't want him barred, you just want to proceed?

> [Trial Counsel]: Yes, please.

This dialogue reflects that Price withdrew his objection to the admission of Officer Hayest's testimony since his trial counsel was able to confer with the officer before taking the stand.  This withdrawal of the objection constitutes a forfeiture of all but plain error in the admission of Officer Hayest's testimony.  *See State v. Swihart*, 3d Dist. Union No. 14-12-25, 2013-Ohio-4645,

¶ 41 ("Due to the withdrawal of the objection, [the defendant] waived all but plain error in the admission of [the witness]'s testimony."), citing *State v. Netherland*, 132 Ohio App.3d 252, 262 (1st Dist.1999).

{**¶9**}    Although Price has preserved a plain error argument on appeal, he has failed to make one.  In his appellate brief, Price merely asserts that "[i]f necessary, the court can review this [issue] under a * * * standard of plain error[.]"  But, he does not fully develop his argument as to how the admission of Officer Hayest's testimony rises to the level of plain error, as the doctrine is outlined in Crim.R. 52(B) and *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).  *See* App.R. 16(A)(7).  "As this Court has repeatedly held, '[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out.'"  (Alterations sic.) *State v. Vu*, 9th Dist. Medina No. 11CA0042-M, 2012-Ohio-746, ¶ 12, quoting *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, * 8 (May 6, 1998).  Consequently, we decline to sua sponte fashion a plain error argument on Price's behalf and then address it.  *E.g.*, *State v. McCrae*, 9th Dist. Summit No. 27387, 2015-Ohio-1803, ¶ 8.

{**¶10**}  Accordingly, we overrule Price's third assignment of error.

### Assignment of Error I

**The trial court erred in convicting Appellant for pandering sexually oriented matter involving a minor because the evidence was insufficient to sustain a finding of guilt.**

### Assignment of Error II

**The Court improperly deny [sic] the motion to dismiss made by the Defense at [the] close of [the] State's case and Defense [sic] case.**

{**¶11**}  In his first and second assignments of error, Price challenges the sufficiency of the evidence to support his convictions.  On appeal, he specifically challenges (1) whether there is sufficient evidence in the record to prove that he was the person who used the laptop to publish

child pornography; and (2) whether there is sufficient evidence in the record to prove that he acted recklessly in publishing the child pornography. We disagree on both points and determine that there is sufficient evidence to support Price's convictions.

## A. Sufficiency of the Evidence Standard

{¶12} "'We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶ 17, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a rational doubt." *Id.* Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

## B. R.C. 2907.322(A)(1)

{¶13} R.C. 2907.322(A)(1) relevantly provides that "[n]o person, with knowledge of the character of the material or performance involved, shall * * * publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality[.]" Although this provision does not include an explicit culpability related to the publication element of the

offense, we have previously recognized that R.C. 2907.322(A)(1) "only requires the State to prove that the person recklessly * * * published the material with knowledge of its character." *State v. Christian*, 9th Dist. Summit No. 27205, 2015-Ohio-1720, ¶ 7, citing *State v. Butler*, 9th Dist. Summit No. 24446, 2009-Ohio-1866, ¶ 21-22; *see also* former R.C. 2901.21(B) ("When the section neither specifies the culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."). Former R.C. 2901.22(C) stated that "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature."[1] We now turn to Price's challenge of the identity and mental state elements of his convictions in turn.

### 1. There Is Sufficient Evidence to Prove Identity

{¶14} "[I]dentity of the perpetrator is an essential element that must be proved beyond a reasonable doubt." *State v. Johnson*, 9th Dist. Lorain No. 13CA010496, 2015-Ohio-1689, ¶ 13, citing *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, ¶ 44-53. After reviewing the record and taking the evidence admitted in the light most favorable to the State, we determine that there is sufficient evidence to show that Price was the person who used the laptop to publish computer files containing child pornography.

### a. The Initial Discovery of Child Pornography Files on Ares

{¶15} A review of the record reveals the following pertinent evidence regarding the identity element. Investigator David Frattare of the Ohio Internet Crimes Against Children

---

[1] 2014 Am.S.B. No. 361, effective March 23, 2015, amended R.C. 2901.21's language regarding statutes without a listed mental state and R.C. 2901.22's definition of recklessness. Since the charged offenses in this matter occurred before Am.S.B. 361's effective date, we rely on the previous versions of the statutory language.

("ICAC") explained that child pornography is often shared via computer peer-to-peer networks. A user obtains access to such a network by installing the requisite software. After installation, the user enters a search term that scans all of the available files on the network. These available files are from other users who have their computers on and are running the necessary software at the same time that the search was entered.

{¶16} This scan produces a result list that contains the files matching the search term. The user reviews the result list, which contains titles for each file matching the search term, and selects the files that he or she wants to download. After the user downloads the selected file, it is stored in a "share" folder within the user's computer. Files that are in the "share" folder are then made available for download by any other user on the peer-to-peer network. There are many different peer-to-peer networks, including a network called "Ares."

{¶17} ICAC has developed a database that lists computer files known to contain child pornography. Investigators have a special version of Ares that searches the available files on that network to determine whether they match the files that are listed in the database. In late May 2013, this special version of Ares detected an IP address that had files matching some of the files listed in ICAC's database. Investigator Frattare subsequently downloaded four files from the IP address on August 20, 2013. He personally viewed the files and determined that they contained child pornography. He also testified that the titles of the files contained terms commonly associated with child pornography. Investigator Frattare further indicated that one of the files had a title with the abbreviation, "9YO," which means that the title purports the file to contain images of a nine-year old child. Another one of the files had a title with the abbreviation, "10 YO," which means that the title purports the file to contain images of a ten-year old child.

Investigator Frattare subsequently learned the physical address associated with the IP address, which was licensed to Price's father.

{¶18} At the time of Investigator Frattare's activities, Detective Jesse Bynum of the Grafton Police Department was running a parallel investigation into the same IP address. During Detective Bynum's investigation in August 2013, he downloaded several files from the IP address, all of which contained child pornography. Some of these files were also downloaded by Investigator Frattare. One file, which was not downloaded by Investigator Frattare, contained a term that is associated with child pornography and the number, "7," which indicates that the file purports to contain images of a seven-year old child.

### b. The Execution of the Search Warrant

{¶19} Based on these activities, the Brunswick Police Department obtained a search warrant for the physical address associated with the IP address from which Investigator Frattare and Detective Bynum downloaded the child pornography. The physical address has a three-story single-family house. The first floor includes a family room, a den, and a stairwell that leads to basement and the second floor. At the top of the stairwell on the second floor, there is a hallway leading to two bedrooms to the left and two bedrooms to the right. One of the bedrooms to the left, which was the room of Price's brother, attaches to a bathroom, which has a door that also leads to the hallway. The other bedroom to the left was Price's, but he slept downstairs in the family room since his bedroom did not have a bed. Price's mother runs a daycare for children out of the house's basement.

{¶20} Police executed the warrant on September 4, 2013 at approximately 10:00 a.m. Officer Hayest assisted with the execution of the warrant. After entering the house from the front door, he proceeded up the stairwell to the second floor. All of the doors in the second floor

hallway were closed. A male, later identified as Price's cousin, and a female, later identified as the cousin's girlfriend, S.T., walked out of one of the bedrooms to the right of the second floor. While Officer Hayest was instructing these two to walk down the stairwell, he noticed another male standing to the left of the second floor and that one of the doors leading to the hallway was open. Officer Hayest instructed this male, who he identified as Price, to walk downstairs.

{¶21} Detective Brian Schmitt of the Brunswick Police Department was also involved with the execution of the warrant. When he first entered the house from the front door, he was responsible for performing a protective sweep of the first floor. During this sweep, Detective Schmitt only saw Price's mother on the first floor. As he searched the rest of the house, he found two tower computers and a Toshiba laptop in the den. He also discovered an Asus laptop and a Dell laptop in the kitchen and an HP computer in the basement. When Detective Schmitt went to the second floor bathroom, he found a Samsung laptop. He testified that the Samsung laptop was sitting on top of the double vanity sink in the area between the sinks. Detective Schmitt further testified regarding this laptop as follows: "Well, it was odd to find a laptop computer in the bathroom. It was plugged in. It was running, warm to the touch and we found clothing items as well as a wallet on top of it." Detective Schmitt opened the wallet and found that there was an identification card in it for Brandon Price. All of the computers were seized and taken to the police department for further examination.

{¶22} Investigator Robert Marok of the Brunswick Police Department was also present as Detective Schmitt searched the bathroom. Since the laptop was warm to the touch and plugged in, Investigator Marok concluded that the laptop was running for some time. He opened the Samsung laptop and observed the open website screens for Facebook and the adult pornography site. He also observed that Ares was open, maximized behind the other two

screens, and running an active search for a term associated with child pornography. Investigator Marok testified that this is not a default setting for Ares; an individual would have to maximize the program and then enter the search terms. He clicked on the start button, which revealed that the Ares icon was the third icon from the top of the start menu. Investigator Marok said that he did limited forensic examination of the Samsung laptop while it was still in the bathroom, which revealed that no computer viruses were active at the time of his initial observation.

### c. Forensic Examination of Seized Computers

{¶23} After the seized computers were transported to the department, Investigator Marok performed forensic analyses of each computer. The only seized computer with Ares installed was the Samsung laptop. This laptop was also the only computer that had files containing child pornography. Investigator Marok found Price's resume saved to the Samsung laptop, as well as pictures of Price with a woman that had the caption "the fiancée and I." None of the other persons living in the house were featured in any of the pictures stored in the Samsung laptop. When Investigator Marok searched the contents of the Samsung laptop, he discovered that Price's name appeared thousands of times. The names of other persons appeared much less frequently. Investigator Marok testified that based on his forensic examination of the Samsung laptop, it was his conclusion that Price was the laptop's primary user. He further testified that he excluded the other household members as primary users: "Basically I did the searches on the names looking to see should their names appear on that computer. With the exception of minimal or little interaction with [Price's mother]'s name and [Price's former girlfriend], there was no other individual in that household[] * * * being connected to be a user."

### d. Testimony of S.T.

{¶24}  S.T. was the only occupant of the house to testify at trial.  She indicated that at the time of the warrant's execution, seven people were living at the house: Price, Price's mother, father, and brother, S.T.'s boyfriend, who was Price's cousin, S.T.'s young child, and S.T.  S.T. testified that Price's father left the house for work at approximately 6:00 a.m. the morning of the warrant's execution.  She also indicated that Price's cousin worked third shift and came to the house at approximately 7:30 a.m. and lay in bed with her.  Their bedroom, which they shared with S.T.'s child, was to the right of the stairwell leading upstairs.  S.T. stated that the other bedroom to the right was the master bedroom, which was where Price's mother and father slept.

{¶25}  At approximately 8:30 a.m., S.T. helped prepare her child for school.  They went into the upstairs bathroom.  While the child brushed his teeth, S.T. noticed the Samsung laptop was to the left of the double vanity sink and out of the way.  Also, there was not a wallet or anything else on top of it.  After taking the child to the bus stop around 9:00 a.m., S.T. got back into bed, where Price's cousin was still laying.  She stayed there until the execution of the warrant at 10:00 a.m. and she never noticed Price's cousin get out of bed.

{¶26}  After police instructed S.T. and Price's cousin to get out of bed, they proceeded downstairs.  She saw Price come down the stairs after them and Price's brother come from the basement, where he was working at the daycare.  Although she acknowledged that she may have told police that the Samsung laptop belonged to Price, she testified at trial that anyone could use any of the computers in the house.  She also testified that she only saw Price and two of his ex-girlfriends using the Samsung laptop.

### e. Summary of Evidence Regarding Identity

{¶27} From this evidence, a rational trier of fact could find that Price was the primary user of the Samsung laptop that contained child pornography and the Ares network over which the files were shared. Moreover, a rational trier of fact could also determine that Price was using that laptop the morning of the search warrant's execution since he was found in the area of the house where the powered up laptop was located with his wallet on top of it. This determination is further corroborated when one considers S.T.'s testimony that indicates that Price was the only member of the household who entered that area of the house between 8:30 a.m. and 10:00 a.m. and that sometime during that timeframe, the position of the Samsung laptop changed. As a result, since Price was using the computer at the time of the warrant's execution, it is rational to conclude that he was the one who started the Ares program, maximized the screen, and entered the search for a term associated with child pornography. And, based on Price's use of the Ares program and knowledge of terms associated with child pornography, it is rational to conclude that he was the person who used the Samsung laptop to publish files containing child pornography.

{¶28} Much of Price's challenge to the sufficiency of the evidence regarding the identity element rests on the lack of direct evidence explicitly indicating that he was the only person who used the Samsung laptop at the time of the child pornography files' publication. But, "circumstantial evidence and direct evidence inherently possess the same probative value[.]" *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus; *see also State v. Suggs*, 9th Dist. Summit No. 21782, 2004-Ohio-4191, ¶ 14 ("'The trier of fact may rely on circumstantial evidence and all reasonable inferences therefrom in arriving at its verdict.'"), quoting *State v. Cloud*, 7th Dist. Columbiana No. 98 CO 51, 2001 WL 1155855, * 3 (Sept. 26,

2001). The circumstantial evidence in the record establishes that Price was the primary user of the Samsung laptop and that he not only used the Ares program, but also that he used it to search for terms associated with child pornography. Consequently, we determine that there is sufficient evidence in the record allowing a rational trier of fact to determine beyond a reasonable doubt that Price was the person who published the child pornography with the Samsung laptop.

## 2. There Is Sufficient Evidence of Recklessness

{¶29} A review of the record reveals the following relevant evidence regarding Price's mental state as to the publication of the child pornography. Investigator Frattare testified that when Ares is downloaded, the user receives a number of notifications indicating that the network shares the files contained within the "share" folder. It also provides a notification that failure to share files with other users can lead to "being blacklisted." Investigator Marok further testified that due to these notifications, if an individual uses the Ares program, he or she knows that other people on the network will get access to the individual's files.

{¶30} These notifications, taken in conjunction with the evidence indicating that Price was using Ares at the time of the search warrant's execution, was the primary user of the Samsung laptop, and knew how to conduct a search for a term associated with child pornography, are sufficient to show that Price was reckless in publishing the files containing child pornography. Moreover, there is sufficient evidence that Price had knowledge of the files' content since the titles of the files described, in graphic detail, sexual activities that involved minor children. Thus, there is sufficient evidence in the record from which a rational trier of fact could conclude that Price acted recklessly.

{¶31} In sum, the record contains sufficient evidence to establish that Price recklessly published computer files containing child pornography with knowledge of their character. As a

result, all of his convictions under R.C. 2907.322(A)(1) are supported by sufficient evidence. Accordingly, we overrule Price's first and second assignments of error.

**Assignment of Error IV**

**The Appellant received ineffective assistance of counsel at trial.**

{¶32} In his fourth assignment of error, Price argues that he received ineffective assistance of counsel. Specifically, he contends that his trial counsel was ineffective for failing to maintain his objection to Officer Hayest's testimony and for failing to present phone records that would have purportedly exonerated him. We disagree.

{¶33} "We only reverse a conviction on the basis of ineffective assistance of counsel where we find (1) trial counsel's performance was deficient; and (2) but for [trial] counsel's deficient performance the result of the trial would have been different." *State v. Velez*, 9th Dist. Lorain No. 13CA010518, 2015-Ohio-642, ¶ 18, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Trial counsel's performance is deficient only where it falls "below an objective standard of reasonable representation." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. In assessing the deficiency of the performance, though, we "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]'" *Strickland* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). Along these lines, we have previously recognized that "trial counsel's failure to make objections is within the wide range of trial tactics and does not establish ineffective assistance of counsel." *State v. Smith*, 9th Dist. Wayne No. 12CA0060, 2013-Ohio-3868, ¶ 24. If we find that trial counsel's performance overcomes the strong presumption of reasonable professional assistance, we may only find prejudice where "there exists a reasonable probability that, were it not for

counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus.

**{¶34}** As to the failure of trial counsel to maintain his objection to Officer Hayest's testimony, it appears that Price is essentially arguing that maintaining the objection would have excluded this testimony. But, a review of the trial transcript plainly reveals otherwise – the trial judge explicitly said he "probably [was] not going to [exclude Officer Hayest]." And, indeed, the trial judge's aversion to excluding Officer Hayest's testimony is consistent with the Ohio Supreme Court's guidance that a trial court's remedy for a criminal discovery violation should be "the least severe sanction." *Papadelis*, 32 Ohio St.3d at paragraph two of the syllabus. Consequently, maintaining the objection would have been futile and we determine that the performance of Price's trial counsel was not deficient in this regard. *See State v. Jackson*, 9th Dist. Lorain No. 14CA010555, 2015-Ohio-2473, ¶ 66 ("[A] motion for continuance at the start of the second day would have been futile and Jackson's trial counsel was not required to engage in such a pointless exercise."), citing *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, ¶ 132, and *State v. Cottrell*, 4th Dist. Ross Nos. 11CA3241, 11CA3242, 2012-Ohio-4583, ¶ 20.

**{¶35}** We also reject Price's argument that his trial counsel was ineffective for failing to present exculpatory phone records on his behalf. These phone records are not in the record and their existence was not raised during the trial court proceedings. This is problematic because "[w]hen an appellant argues that trial counsel was ineffective based on evidence that is outside of the trial court record, it is 'impossible' for this Court to determine the merits of the argument." *State v. Alston*, 9th Dist. Lorain No. 14CA010612, 2015-Ohio-4127, ¶ 21, quoting *State v. Gibson*, 69 Ohio App.2d 91, 95 (8th Dist.1980). As a result, when a criminal defendant attempts to assert an ineffective assistance of counsel claim based on evidence outside of the record, the

claim is "more appropriately raised in a postconviction relief motion." *State v. Webb*, 9th Dist. Summit No. 27424, 2015-Ohio-2380, ¶ 44. Thus, we cannot conclude based on the record before us whether there was any ineffective assistance on trial counsel's part in this regard.

{¶36} Accordingly, we overrule Price's fourth assignment of error.

III.

{¶37} Having overruled all of Price's assignments of error, we affirm the judgment of the Medina County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.